BEFORE THE FIRST DIVISION, MARCH 15, 1957

No. 60566.—Josiah Wedgwood & Sons, Inc., and Roberts Reilly & Sons v. United States, protest 260959–K (New York).

OLIVER, Chief Judge: This protest relates to certain articles, described on the invoice as "Round Cameos—1⅛"—Assorted in six different Flaxman Dancing Hours subjects," assessed with duty at the rate of 55 per centum ad valorem under paragraph 1527 (a) (2) of the Tariff Act of 1930, as modified by T. D. 51802, as parts of jewelry. Plaintiffs claim that the merchandise is properly dutiable at the rate of 10 cents per dozen pieces and 35 per centum ad valorem under paragraph 211 of the Tariff Act of 1930, as modified by T. D. 52373 and T. D. 52476, as articles of stoneware, other than tableware, kitchenware, or table or kitchen utensils, valued at $3 or more per dozen articles and "Painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner." Plaintiffs' claim is based on the premise that these cameos are not dedicated for use with items of jewelry, but that they are actually used for many different purposes, and, therefore, are not classifiable as parts of jewelry, as

assessed. It is conceded that the articles in question are valued at more than $3 and under $10 per dozen pieces, and that they are not kitchenware, tableware, or table or kitchen utensils.

Plaintiffs introduced the only witness who appeared herein. He stated that he is associated with Josiah Wedgwood & Sons, Inc., a plaintiff herein, that he has been an importer for 50 years, and that he has imported "mainly tableware in bone china" and also "Wedgwood" chinaware. Prior thereto, he worked as assistant production manager for the foreign manufacturer and exporter of the cameos in question. During the course of such experience, over a period of 2 years, he became familiar with the process of manufacture of cameos, such as those involved herein.

A sample is in evidence (plaintiffs' illustrative exhibit 1). It is a cameo, approximately 1⅛ inches in diameter. The body is pale blue in color, and superimposed thereon is a grouping of white figures. The witness testified that these cameos are composed of stoneware, known as "Jasper," which is descriptive of a type of material made in accordance with a secret formula, "consisting of china clay, bowl clay, Cornish stone, and so forth." Jasper cameos are made in different colors, the distinguishing characteristic being that they consist always of a white outer surface against a colored body.

Although the shipment under consideration consisted of Jasper cameos, 1⅛ inches in diameter, the witness' testimony embraces Jasper cameos of various sizes—10 or 12, ranging in diameter from seven-eighths of 1 inch to 2½ inches— imported by the said Josiah Wedgwood & Sons, Inc., and sold to "cosmetic houses, lamp manufacturers, furniture manufacturers, manufacturers of gift items and to jewelry mounters." (R. 8.) Based on his personal observation of the use of Jasper cameos, the witness testified, referring specifically to the particular size covered by the importation in question, that these cameos are used as decorations on furniture, "as decorative parts of architecture," and as ornaments on giftware items, including wooden cigarette boxes, approximately 3½ inches square (plaintiffs' illustrative exhibit 3). Larger sizes of these cameos are mounted on lamps for decorative purposes (plaintiffs' collective illustrative exhibit 2) and on stair balustrades. Smaller sizes are used by jewelers in brooches, earrings, cuff links, and bracelets, as well as to decorate perfume bottles (plaintiffs' illustrative exhibit 4), and in door pulls and door knobs. All of the sizes, from the smallest to the largest, are used in their condition, as imported, for the various purposes, hereinabove outlined.

Merchandise is classifiable under the provision for "parts" of an article when it is unserviceable for any other purpose, or incapable for any other use, than as part of a particular article or a particular class of articles. *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873; *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669. The *Lyon & Healy* case involved merchandise that the court described as follows:

The violin and cello necks are cut into shape, but are not polished or fitted, nor have they holes bored through them for the keys for the violin strings. They are, however, so far shaped as to indicate *per se*, as imported, their ultimate use, and that by reason of their shape and condition as imported they are unfit for any other use.

In holding such merchandise to be properly classifiable as parts of musical instruments, the appellate court stated that "Their physical construction is such as to plainly render them unserviceable for any other purpose and to clearly identify them and their future use as parts of musical instruments." In the *Schenkers*,

## 432

*Inc.*, case, *supra*, the court cited, with approval, the *Lyon & Healy* case and stated:

\* \* \* where a material has been so advanced in manufacture as to have reached a stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article.

The basic principle here under discussion was comprehensively set forth in *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T. D. 37873. That case involved base metal snaps, clasps, and swivels that had been dipped in acid and lacquered and which were employed in the manufacture of various articles, including bead necklaces and neck, fan, vest, and eyeglass chains. In excluding the merchandise from the provision for parts of articles, the court reasoned as follows:

An article not an actual constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

Inasmuch as the snaps, clasps, and swivels under discussion are just as applicable to the manufacture of bead necklaces as they are to the making of chains it is evident that they are not finally committed to the manufacture of chains, and consequently it can not be said that they are "parts of chains." \* \* \*

The same principle of law was enunciated in *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T. D. 40169. There, the merchandise consisted of pieces of pressed amber, resembling pipe bits and cigarette holders, except that they were not bored or so shaped as to be usable for those purposes in their imported condition. In excluding the merchandise from a provision for smokers' articles and parts thereof and holding it to be classifiable under the general provision for amber and amberoid, unmanufactured, the appellate court stated as follows:

The authorities seem to be unanimous in their support of the proposition that in order to take the importation out of paragraph 11 as amberoid, unmanufactured, it must be found that they were manufactured to such extent that they were committed or dedicated to a use as smokers' articles alone, and that if they had not been so manufactured when imported, and were in such form that they could readily be used for other purposes and were so used, they should be classified as amberoid, unmanufactured. \* \* \*

Under the cited authorities, the Jasper cameos in question are not properly dutiable as parts of jewelry, as classified by the collector. Plaintiffs' uncontradicted evidence—oral testimony as well as samples—is sufficient to establish that these Jasper cameos are articles of colored or decorated stoneware, and that, in their condition as imported, they are used for a variety of purposes in many different ways.

On the basis of the record before us, and for all of the reasons hereinabove set forth, we hold the stoneware cameos in question to be properly classifiable as articles of stoneware of the class or kind provided for in paragraph 211, as amended, *supra*, and dutiable thereunder at the rate of 10 cents per dozen pieces and 35 per centum ad valorem, as claimed by plaintiffs.

The protest is sustained and judgment will be rendered accordingly.